IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLAUDIO CONEJO, *et al.*,

    Plaintiffs,

vs.                        Case No. 14-1424-JTM

COLEMAN CABLE, LLC, *et al.*,

    Defendants.

MEMORANDUM AND ORDER

Plaintiffs Claudio Conejo and other members of his family brought the present action against defendant Coleman Cable Inc. for injuries from a Dodge City, Kansas house fire. The Conejos contend that the December 27, 2012, fire was caused by a defective extension cord sold by Coleman.

On July 2, 2015, the plaintiffs amended their complaint to add defendant HW-Genting, a foreign corporation, which allegedly manufactured the extension cord. (Dkt. 30). HW-Genting has moved to dismiss the complaint against it for lack of jurisdiction. (Dkt. 33). It has also moved for summary judgment, arguing that the action is time-barred under the two-year statute of limitations. (Dkt. 35). The court need not decide the second motion, as it agrees jurisdiction does not exist as to HW-Genting, a foreign corporation which

makes and sells electrical equipment in Asia, and has no connection to the State of Kansas.

Affidavit evidence submitted by the defendant demonstrates that HW-Genting is a corporation organized under Indonesian law, headquartered in Malaysia. It operates a factory in Indonesia and has a marketing office in Taiwan. It is a manufacturer of electrical components, making products exclusively at its factory in Indonesia. The company takes product orders from customers, manufactures ordered goods to customer specifications, and then fills customer orders by delivering goods Free on Board (FOB) Singapore.[1]

HW-Genting has approximately 20 customers for which it manufactures electrical components. It does not market, sell or ship any products directly to retail stores or individual consumers. Its customers use their own independent distribution channels to bring goods to the United States and to sell them through retailers in various states; HW-Genting has no control, direction or influence over its customers' distribution networks. Once the goods manufactured by HW-Genting are shipped FOB Singapore, further handling and distribution of those goods is carried out independently and unilaterally by parties other than HW-Genting.

---

[1] FOB shipped goods are "delivered free of charge on the means of conveyance, such as air, rail, or sea." BLACK'S LAW DICTIONARY (10th ed.2014). The term allocates "the rights and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss, whereby the seller must clear the goods for export, and the buyer must arrange for transportation." *Id.* "Typically, free-on-board provisions require that the seller take responsibility (and bear corresponding risks) for delivering the goods only to the transporter, who is selected and arranged for by the buyer. The seller's delivery obligations end when the goods are delivered into the transporter's possession, at which point the buyer takes over any risk of loss, as well as any shipping or transportation costs." *Global Material Tech. v. Dazheng Metal Fibre*, 2015 WL 1977527, *3 n. 2 (N.D. Ill. May 1, 2015).

Contrary to plaintiffs' allegation in the First Amended Complaint, HW Genting does not market or sell any products in the United States, let alone Kansas. It does not have any current, former or prospective customers in Kansas, and it has never shipped any product to a customer or distributor located in Kansas.

HW-Genting does not use any Kansas-based vendors or suppliers, and no employee or agent of HW-Genting has ever been to Kansas on company business. It does not conduct any business in Kansas, and it does not make any profit from the distribution or sale of goods in Kansas. Rather, it receives from its customers in Asia the contract price for manufactured goods, regardless of where those goods are eventually distributed and sold at retail.

HW-Genting is not registered to do business in Kansas, has never applied for a certificate of authority from the Kansas Secretary of State to conduct business in the state, and does not maintain a registered agent for service of process in the state. It does not pay Kansas taxes, does not own, lease, operate, manage or control any property or business in Kansas, does not have any offices or employees in Kansas, does not maintain any bank accounts in Kansas, and does not advertise or solicit business in Kansas.

Defendant Coleman Cable is one of HW-Genting's customers. Its relationship with Coleman Cable is the same as its other general customers.

The Kansas long-arm staute is construed to permit the exercise of personal jurisdiction to the "the full extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution."*In re Hesston Corp.*, 254 Kan. 941, 951, 870

P.2d 17 (1994) (internal quotation marks and citation omitted). Because the statute is thus co-extensive with the limits of the due process clause, the court may proceed directly to consider the constitutional issue. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994).

An exercise of personal jurisdiction over a nonresident defendant is consistent with due process if, first, "the nonresident defendant has minimum contacts with the forum state such that he should reasonably anticipate being haled into court there," and, second, such jurisdiction will not "offend[] traditional notions of fair play and substantial justice, that is, whether the exercise of jurisdiction is reasonable under the circumstances."*Melea, Ltd., v. Jawer SA*, 511 F.3d 1060, 1067 (10th Cir. 2007) (internal quotation marks and citations omitted). The first step may be satisfied by showing either general jurisdiction, based on the existence of "continuous and systematic general business contacts with the forum state," or by specific jurisdiction, which exists when the defendant "purposefully direct[s] its activities at the state residents" and "the cause of action arises out of those activities." *Id.*

General jurisdiction exists where a defendant's contacts with forum are "so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, __U.S. __, 134 S.Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. __, 131 S.Ct. 2846, 2851 (2011)). Specific jurisdiction arises when the defendant has purposefully availed itself of the privilege of conducting business within the forum State such that being sued there is foreseeable. *See Hanson v. Denckla*, 357 U.S. 235,

4

253 (1958); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The defendant's contacts with the forum state must be sufficient that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1941))

The plaintiff has the burden of demonstrating, by affidavit or other documentary materials, the existence of personal jurisdiction over a defendant. *BG Products v. Stinger Chemical*, No. 15-1209-JTM, 2015 WL 5637549, *2 (D. Kan. Sept. 24, 2015). "'When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.'" *Id.* (quoting *Auxier v. BSP Warehouse & Distrib.*, 2011 WL 3903010 (D.Kan. Sept. 6, 2011) (internal citations and quotations omitted)).

Here, the plaintiffs have failed to meet this burden. Their response to the defendant's motion is two-fold. First, they argue that the defendant's actions were more extensive than set forth in the affidavit evidence submitted by HW-Genting, "[b]ased on information available on its website." (Dkt. 45, at 3). Second, they contend that as a result the defendant is subject to personal jurisdiction in Kansas because it sent the extension cord into a "stream of commerce" which ultimately found its way to this State. The court rejects both arguments.

First, the plaintiffs substantially misstate the information contained on the website. They claim that the defendant "exports 60% of its cables to the U.S. and the other 40% to

5

Canada" and makes "100 million U.S. Dollars" in revenue. The website actually indicates that HW-Genting exports 60% of products to the United States and Canada combined, and the other 40% to Asian customers. Moreover, these sales figures reflect sales of *all* of the defendant's electrical equipment products. Plaintiffs have supplied no information as to the sales of the product at issue in this action, extension cords. Finally, the website indicates that the $100 million dollar figure represents the total *capacity* of the defendant's Indonesian factory, not the actual revenue of the defendant at any given time.

The plaintiffs have supplied no evidence as to the actual sales of defendant. Nor have they supplied any evidence which would contradict the evidence submitted by HW-Genting in its original motion, which establishes that the defendant did not ship the extension cord to Kansas, it did not manufacture the product specifically for sale in Kansas, did not market or otherwise advertise the product for sale in Kansas, and did not establish channels for communication with consumers in Kansas.

This court has recognized that the "stream of commerce" theory of jurisdiction has been implicitly rejected by the Supreme Court. *See Eaves v. Pirelli Tire*, No. 13-1271-SAC, 2014 WL 1883791, *14 (D. Kan. May 12, 2014) (citing *J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780, 2793 (2011) (Breyer, J., concurring)). *See In re Chinese-Manufactured Drywall Prod. Litig'n*, 753 F.3d 521, 541 (2014) ("Circuit courts interpreting *McIntyre* have concluded that under *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), Justice Breyer's concurring opinion "furnished the narrowest grounds for the decision and controls") (citations omitted)).

In *McIntyre*, Justice Breyer's concurring opinion observed that a broad theory which would "rest jurisdiction instead upon no more than the occurrence of a product-based accident in the forum State" was inconsistent with prior Supreme Court precedent, which "has rejected the notion that a defendant's amenability to suit 'travels with the chattel.'" 131 S.Ct. at 2793, (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). As a result, personal jurisdiction will not arise simply from "the defendant's use of a national distributor who happens to direct product of any quantity to the forum." *Eaves*, 2014 WL 1883791 at *14.

Rather, nationwide distribution is relevant, but additional minimum contacts must exist reflecting "[1] the defendant's direction or control over the flow of product into the forum, [2] the quantity of the defendant's particular product regularly flowing into the forum, and [3] the distinctive features of the forum that connect it with the product in question." *Id.*

The plaintiffs have supplied no evidence regarding these factors. H-W Genting has no direction or control over its products after they ware sold in Singapore. There is no evidence at all as to the number of H-W Genting extension cords flowing into Kansas. And the plaintiffs have shown nothing distinctive about Kansas in relation to the sales of these extension cords.

The cases cited by the plaintiffs upholding the exercise of jurisdiction, such as *Clune v. Alimark AB*, 233 F.3d 538 (8th Cir. 2000) are distinguishable. In the present case, as noted above, there is no evidence or allegation that HW-Genting has any involvement

7

whatsoever in the distribution process after the sale of its products in Singapore. In *Clune*, the court stressed that the defendant "did more than simply set a product adrift in the international stream of commerce;" it actually "created the distribution system that brought the hoist to Missouri." 233 F.3d at 543.

Purposeful availment may exist if a foreign manufacturer "purposefully directed actions toward the forum," or was otherwise actively "'aware that the final product is being marketed in the forum State.'" *Monge v. RG Petro-Machinery*, 701 F.3d 598, 619-20 (10th Cir. 2012) (quoting *Asahi Metal Industry v. Superior Court*, 480 U.S. 102, 117 (987). However, for purposes of applying a stream of commerce theory, *J. McIntyre* "makes clear that a manufacturer's broad desire to target the United States through a distributor will not suffice." *Williams v. Romarm*, SA, 756 F.3d 777, 785(D.C. App. 2014). The mere fact that "*some* [defendant]-manufactured [products] have ended up in the District" through the unilateral actions of third parties "cannot satisfy due process." *Id.* (emphasis in original). "Absent facts showing [the defendant] targeted the District or its customers in some way—which do not exist in the record—due process will not permit the district court to exercise its jurisdiction over [the defendant]." *Id.* at 785-86.

The court finds that the plaintiffs have failed to establish that HW-Genting has sufficient minimum contacts with Kansas as to justify a finding of specific jurisdiction. As in *Eaves*, "none of the 'contact' factors in the stream of commerce approach, individually or in combination, satisfy the constitutional analysis of minimum contacts and purposeful availment, each of which rest upon a particular notion of defendant-focused fairness."

8

*Eaves*, 2014 WL 1883791 at *20 (citing *J. McIntyre*, 131 S.Ct. at 2793 (Breyer, J., concurring)).

Given this finding, the court need not address the defendant's argument with respect to the second step of the due process analysis, that an exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. The defendant's alternative argument, that the present action is precluded by the statute of limitations, is also moot.

IT IS ACCORDINGLY ORDERED this 25th day of February, 2016, that the defendant's Motion to Dismiss (Dkt. 33) is granted; defendant's Motion for Summary Judgment (Dkt. 35) is denied as moot.

____J. Thomas Marten_____<br>J. THOMAS MARTEN, JUDGE